# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA J. BIDDIE,<br><br>                Plaintiff,<br><br>        vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant | Case No.: 1:11cv01311 AWI DLB<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Donna J. Biddie ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed for SSI on April 17, 2008. AR 121-23. She alleged disability since February 4, 1999, due to post traumatic stress disorder, depression and arthritis. AR 121, 133-

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

40. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 61-65, 71-75, 76-77.  On February 8, 2010, ALJ Sandra K. Rogers held a hearing.  AR 25-40.  ALJ Rogers denied benefits on April 30, 2010.  AR 7-20.  On June 1, 2011, the Appeals Council denied review.  AR 1-4.

<u>Hearing Testimony</u>

ALJ Rogers held a hearing on February 8, 2010.  Plaintiff appeared with her attorney, Ben Kuykendall. Vocational expert ("VE") George Meyers also appeared and testified.  AR 27.

*Plaintiff's Testimony*

Plaintiff has been seeing Dr. Ignacio, a psychiatrist, for about 10 years.  Dr. Ignacio said she has post-traumatic stress disorder (PTSD) and recurring depression.  Her treating physician, Dr. Elizabeth LaBelle, says she has diabetes, hepatitis C and degenerative joint disease in the shoulder, hip and neck.  She also had ovarian cancer, a stroke in 1995 and stage four cirrhosis of the liver.  AR 28-29.

Plaintiff reported neuropathy in her hands and feet, which causes numbness and burning, and requires her to wear special shoes.  She has balance problems and a left-arm tremor from her stroke.  She also has osteopenia, a fracture in her lower back and a protruding disc.  She takes pain pills for her back.  AR 29-30.

Plaintiff testified that she lives with her father.  She can sit for 20 or 30 minutes, can stand for 10 or 15 minutes and can walk one block.  She can carry milk and sometimes grocery shops with her dad.  She never shops by herself.  At home, she makes her bed, but her dad does "most of the stuff."  AR 31-32.  She is clean and sober, but smokes cigarettes.  AR 35.

On a regular day, she wakes up depressed.  She has coffee in the morning and then lies back down.  If her dad fixes breakfast, she eats a little and then lies back down.  She sleeps at least eight hours during the day.  AR 32-34.

*Vocational Expert's Testimony*

The VE testified that Plaintiff's past work as a fast food worker, which was performed for one month in 1996 and one month in 1997, is light, unskilled and SVP 2. AR 36.

For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education and work experience as Plaintiff. The ALJ asked the VE to further assume that this person could lift twenty pounds occasionally, 10 pounds frequently, could stand and walk or sit six hours in an eight-hour day, occasionally could climb ramps and stairs, but never ladders ropes and scaffolds, occasionally could reach overhead with the left upper extremity and must avoid concentrated exposure to heights and moving machinery. The VE testified that there would be jobs in the national or regional economy that this person could perform, such as cashier, assembler of small products and storage rental clerk. AR 37.

For the next hypothetical, the ALJ added that this person was moderately limited in the ability to interact appropriately with the general public. The VE testified that the cashier position would be totally eliminated and the mini-storage manager job would be eroded by 80 percent. However, the assembler position would not be affected and there would be other, more appropriate jobs that would work, such as housekeeper and office help. AR 38.

For the next hypothetical, the ALJ asked the VE to assume this person could only do sedentary work, but all the other limitations remained the same, including dealing with the public. The VE testified that there would be other jobs existing in the national or regional economies that this person could perform, such addresser, lens inserter and ticket counter. AR 38-39.

For the next hypothetical, Plaintiff's counsel asked the VE to assume a person with poor ability to relate to co-workers, poor ability to deal with the public, poor ability to interact with supervisors, poor ability to deal with work stress, poor ability to understand, remember and carryout complex job instructions, poor ability to behave in an emotionally stable manner, poor

ability to relate predictably in social situations, fair ability to demonstrate reliability, fair ability to maintain personal appearance, fair ability to follow work rules, fair ability to function independently and fair ability to maintain attention, concentration.  The VE testified that this person could not do any of the jobs listed.  AR 39-40.

Medical Record

On May 23, 2006, Plaintiff saw Dr. Elmer Ignacio for medication review.  She was to continue her psychotropic medications at the same dose for maintenance.  AR 239-41.

On June 5, 2006, Plaintiff complained of back pain, which was worse with activity and was not controlled with Vicodin.  On physical exam, Plaintiff had 5/5 strength in her extremities with no edema.  Dr. Anita Prabhu assessed Plaintiff with chronic pain in her shoulder and back and increased her Vicodin.  AR 235-37.

On September 9, 2006, Plaintiff reported that she had been experiencing anxiety/panic attacks, losing her hair and excessive sweating.  On exam, Dr. Ignacio noted the Plaintiff was not in distress, but had limited insight and judgment.  She was able to attend to herself and to her activities of daily living.  AR 232-34.

On March 22, 2007, Plaintiff received follow-up care from Dr. Ignacio for dysphoric symptoms.  Dr. Ignacio continued Plaintiff on her psychotropic medications for maintenance and prescribed Navane for anxiety/agitation/restlessness.  AR 220-23.

On June 29, 2007, Plaintiff reported to Dr. Prabhu that she was drinking and did cocaine because she was upset after being rejected for social security.  AR 213.  On the same day, Plaintiff told Dr. Ignacio that things were bad.  She had increasing pressure and was upset that her disability claim was denied.  Plaintiff was mildly anxious.  AR 214-15.

On July 12, 2007, Plaintiff sought treatment for left foot pain.  A left foot x-ray was negative and she was advised to get better footwear.  AR 209-11.

On December 6, 2007, Plaintiff claimed that she had been experiencing anxiety and panic attacks. She still had PTSD symptoms, but not as much as in the past. Dr. Ignacio diagnosed PTSD and depression. AR 206-07.

On March 11, 2008, an x-ray showed mild degenerative joint disease of Plaintiff's left hip and mild degenerative change in the lower lumbar spine. AR 188.

On April 2, 2008, Plaintiff saw Dr. Ignacio for follow-up care and reported experiencing anxiety and panic attacks. She still had PTSD symptoms, but not as much as in the past. Dr. Ignacio noted that Plaintiff was mildly anxious with mild pressure of speech and was feeling depressed. She had limited insight and judgment, but was able to attend to herself and to her activities of daily living. Dr. Ignacio diagnosed PTSD and depression. AR 198-200.

On July 16, 2008, Dr. S. Reddy, a state agency physician, completed a Physical Residual Functional Capacity Assessment form. Dr. Reddy opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday. She could push and/or pull without limitation. She could climb ramps and stairs occasionally, but could never climb a ladder, rope or scaffolds. She was limited to occasional overhead reaching with her left upper extremity and must avoid work at unprotected heights, near hazardous machinery or near open flames. AR 249-54.

On July 30, 2008, Norman Zukowsky, Ph.D., a state agency consultant, completed a Psychiatric Review Technique form. Dr. Zukowsky indicated that Plaintiff had a mood disorder NOS and PTSD. He opined that Plaintiff had both moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. AR 258-68.

Dr. Zukowsky also completed a Mental Residual Functional Capacity Assessment form. He opined that Plaintiff was moderately limited in the ability to understand and remember

5

detailed instructions and was moderately limited in the ability to carry out detailed instructions. She also was moderately limited in the ability to interact appropriately with the general public. Dr. Zukowsky concluded that Plaintiff had adequate understanding and memory for short and simple tasks and that she could maintain attendance, concentration, persistence and pace. She could interact with others, but should not interact with the public. She also could travel and could cope with ordinary stress and changes, but must avoid hazards. AR 269-71.

On August 25, 2008, Plaintiff saw psychiatrist Ashok Rao, M.D. at the Veteran's Administration for mental health medication management. Plaintiff told Dr. Rao that she had been taking care of her elderly parents, which was stressful, and that she had been experiencing anxiety and panic attacks. Dr. Rao noted that Plaintiff was mildly anxious and her affect was reactive to topics. Her cognitive functioning was not impaired. Dr. Rao diagnosed PTSD and panic disorder without agoraphobia. AR 292-95.

On October 23, 2008, Plaintiff complained to Dr. Pradhu of being under stress from taking care of her parents. She also reported burning pain in her feet. AR 288.

On April 28, 2009, Dr. Rao completed a report of Physical and Mental Work-Related Impairments. Although he identified a treatment history extending from August 2008 to April 2009, he reported providing her no treatment. According to Dr. Rao, Plaintiff had poor functioning in every category, including making occupational adjustments, making performance adjustments and making personal/social adjustments. He noted that Plaintiff had a diagnosis of PTSD, along with several psychosocial stressors. AR 355-59.

ALJ's Findings

The ALJ first found that there was a presumption of continuing non-disability since December 11, 2006, the date of a previous ALJ's decision. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998). The ALJ next found that Plaintiff had not engaged in substantial gainful activity since her application date. The ALJ further found that Plaintiff had the severe impairments of

asthma, diabetes, hepatitis C, depressive disorder and post-traumatic stress disorder. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, including lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for a total of about 6 hours in an 8-hour workday and sitting for total of about 6 hours in an 8-hour workday. She could not climb ladders, ropes or scaffolds, but occasionally could climb ramps and stairs. She occasionally could reach overhead with the left upper extremity, but must avoid concentrated exposure to hazards, such as machinery, heights and open flames. Additionally, she was limited to short and simple tasks and should not interact with the public. With this RFC, the ALJ concluded that Plaintiff could perform jobs existing in the national economy. AR 13-19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are

supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §416.920(a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since April 17, 2008; (2) has an impairment or a combination of impairments that is considered "severe" (asthma, diabetes, hepatitis C, depressive disorder and post-traumatic stress disorder) based on the requirements in the Regulations (20 C.F.R. § 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy. AR 13-19.

Here, Plaintiff claims the ALJ erred in finding that she did not overcome a presumption of continuing non-disability. Plaintiff also claims the ALJ erred by: (1) rejecting the opinion of

Dr. Rao; and (2) presenting an incomplete hypothetical to the VE at step five of the sequential evaluation.

## DISCUSSION

### A. *Chavez* Presumption of Continuing Non-Disability

Plaintiff challenges the ALJ's determination that she did not overcome the presumption of continuing non-disability. In order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding of non-disability, a plaintiff must prove "changed circumstances" indicating a greater disability. *Chavez*, 844 F.2d at 693.

Plaintiff argues that a new impairment accepted by the ALJ in the decision at issue showed changed circumstances. More specifically, Plaintiff contends that the first ALJ found in 2006 that Plaintiff had the severe impairments of asthma, diabetes, hepatitis C and depression (AR 51), but the ALJ here found that she also had the severe impairment of PTSD (AR 13). In short, Plaintiff contends that the presumption does not apply because of an additional impairment not considered in the previous application.[1]

Plaintiff correctly notes that it would be inappropriate to apply the presumption where a subsequent application raises new impairments. *See, e.g., Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). In this case, however, Plaintiff is elevating form over substance. In 2008, the prior ALJ clearly considered evidence of Plaintiff's PTSD at step two of the sequential evaluation and in determining Plaintiff's RFC. AR 51-52, 54. The ALJ concluded that despite Plaintiffs' "allegations of totally disabling post-traumatic stress disorder," the longitudinal medical records did not support the severity of her claimed symptoms. AR 54. Given the prior

---

[1] Plaintiff does not argue or cite evidence that there was an increase in the severity of her PTSD to preclude application of the presumption of continuing non-disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). Even if she did, such an argument would fail. ALJ Rogers determined that there had been no increase in the severity of Plaintiff's mental health impairments based on, among other things, psychiatric evidence in April 2008 noting that Plaintiff had fewer PTSD symptoms than in the past. AR 13, 16-17, 198-200.

ALJ's consideration of this impairment, it is evident that Plaintiff's subsequent application did not allege PTSD as a "new impairment" that would bar application of the presumption of continuing non-disability.

### B.  Treating Physician Opinion

Plaintiff contends that the ALJ gave insufficient reasons to reject the opinion of her treating physician, Dr. Ashok Rao.  Generally, the opinion of a claimant's treating physician is entitled to more weight than the opinions of doctors who do not treat the claimant.  20 C.F.R. § 416.927(c)(2); *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007).  If there is substantial evidence in the record contradicting the opinion of the treating physician, then such an opinion is not entitled to controlling weight.  *Id.* at 632.  Even in that instance, however, the opinion of a treating physician is still entitled to deference.  *Id.*  If the ALJ disregards the opinion of a treating physician, he must make findings setting forth specific and legitimate reasons for doing so.  *Id.*

Here, the ALJ provided specific and legitimate reasons for discounting Dr. Rao's form opinion in which he rated Plaintiff's ability to perform each and every work-related mental activity as "poor."  AR 18, 358.  First, the ALJ rejected Dr. Rao's opinion because it consisted "almost exclusively of box-checking" and was "utterly devoid of medical explanation apart from a statement that 'patient carries a diagnosis of PTSD, along with several psychosocial stressors.'"[2]  AR 18.  An ALJ may discredit a treating physician's opinion that is conclusory, brief, and unsupported by objective medical findings.  *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Second, the ALJ found that Dr. Rao's opinion was undermined by internal inconsistencies.  AR 18.  An ALJ may properly discount a treating physician's opinion based on internal inconsistencies and contradictions.  *See, e.g., Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

---

[2]  The ALJ also believed the assessed limitations were "misleading" to the extent they were based on Plaintiff's psychosocial stressors, rather than her mental impairment.  AR 18.

(ALJ permissibly rejected treating physician's opinion containing contradictory observations); Gonzales v. Astrue, 2012 WL 1131525, *8 (E.D. Cal. Mar. 30, 2012) (ALJ did not err by rejecting treating physician opinion containing contradictory statements).  Here, for example, the ALJ discounted Dr. Rao's opinion because he identified the same degree of limitation for Plaintiff's ability to perform simple tasks, detailed task, and complex tasks.  AR 358.  The ALJ also indicated that Dr. Rao's assessed degrees of limitation were inconsistent with his own relatively normal clinical findings.  AR 18.  According to the record, Dr. Rao opined that Plaintiff had poor abilities in every work-related mental activity, which contradicted his clinical findings that Plaintiff was only mildly anxious and her cognitive functioning was not impaired. AR 292-95, 355-59.

### C. Vocational Expert Testimony

Plaintiff argues that the ALJ erred in relying on the VE's testimony in response to an incomplete hypothetical.  Specifically, Plaintiff contends that the hypothetical posed to the VE was not complete because it did not include the RFC's preclusive limitation on public contact.  A hypothetical posed to a vocational expert must contain "*all* of the limitations and restrictions" of the claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (emphasis in original).  Here, the ALJ found that Plaintiff's RFC included a limitation that she "should not interact with the public."  AR 15.  The ALJ premised this RFC on the opinion of the state agency consultant who opined that Plaintiff was moderately limited in the ability to interact appropriately with the general public.  AR 17, 269-71.  Thus, the ALJ properly accounted for Plaintiff's limitation on public interaction by positing a hypothetical person who was moderately limited in the ability to interact appropriately with the general public.  AR 37.  The VE testified jobs existing in the national economy that this person could perform, including office helper.  AR 37-39.  The ALJ appropriately relied on this testimony to conclude that Plaintiff could perform the requirements

of office helper and that there were a significant number of such jobs in the regional economy. AR 19.

Even if the ALJ's reference to a moderate limitation would not account for an inability to interact with the public, any perceived error in the hypothetical question is harmless.  See *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination").  The VE provided additional testimony indicating that "most of the office helper types of positions that would be in the unskilled [level] would not be dealing much with the public."  AR 39.  Therefore, there was evidence in the record indicating that Plaintiff could perform the position of office helper although she was limited in her public interaction.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Donna J. Biddie.

These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within **fourteen (14) days** after being served with a copy, any party may serve on

opposing counsel and file with the court written objections to such proposed findings and recommendations.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within **fourteen (14) days** after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.

   Dated:   **October 9, 2012**                             /s/ *Dennis L. Beck*
                                                               UNITED STATES MAGISTRATE JUDGE